Herman KRANGEL, et al., Plaintiffs,

v.

GOLDEN RULE RESOURCES,
LTD., et al., Defendants.

No. Civ.A. 98–901.

United States District Court,
E.D. Pennsylvania.

July 22, 2000.

Robert M. Roseman, Spector, Roseman & Kodroff, P.C., Philadelphia, PA, Anthony J. Bolognese, Spector & Roseman, P.C., Philadelphia, PA, for Herman Krangel and Lillian Krangel.

Gregory M. Harvey, Montgomery, McCracken, Walker & Rhoads, LLP, Philadelphia, PA, for Golden Rule Resources, Ltd., Glen H. Harper, Robert Ingram, and G.A. James Devonshire.

### MEMORANDUM AND ORDER

KATZ, Senior District Judge.

The parties have requested approval of a settlement in the above-captioned class action. A hearing on the final certification of the settlement class and on the fairness and adequacy of the settlement was held on June 20, 2000. Because a some of the putative settlement class members did not receive notice of the pending settlement until just prior to the June 5, 2000, deadline for objections, the parties requested that the court delay its final decision until after July 20, 2000, in order to give the members who received late notification ample opportunity to file objections. *See* Stip. of June 7, 2000 ¶ 5. No objections having been received, the court certifies the class and holds that the settlement is fair, adequate, and reasonable.

## I. Background

### A. Underlying Allegations

This litigation, which alleges violations of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5, was brought on behalf of purchasers of the common stock of corporate defendant Golden Rule Resources, Ltd. (GR), a company engaged in the exploration and development of precious metal properties in the United States, Canada, Venezuela, and Ghana. GR's stock is traded on the Toronto Stock Exchange. The plaintiffs are two Pennsylvania citizens and a Canadian citizen who purchased GR common stock. The individual defendants, Glen H. Harper, James Devonshire, and Robert Ingram, were members of GR's board of directors during the time relevant to this action. Harper is also GR's president and was so during the relevant time period. GR operates exploration programs for itself and on behalf of its joint venture partners, its subsidiaries, affiliates, and other clients on a contractual and consulting basis.

The second amended class action complaint alleges that, beginning on October 3, 1996, defendants issued a series of materially false and misleading statements that misrepresented both the quantity and quality of gold finds in GR's mining operations in Ghana. These operations were conducted through GR's subsidiary, Hixon Gold Resources, Inc. (HG).[1] According to the second amended

---

1. GR owned approximately one-half of HG's stock during the relevant time period. GR's mining operations in Ghana, which were conducted through HG, were represented to be a

class action complaint, the defendants' touting of the Ghanan mines artificially inflated the price of GR's stock to an all-time high of slightly more than $13 per share by the early spring of 1997. According to the plaintiffs, the individual defendants and insiders others sold more than 1.8 million shares of the allegedly inflated stock within a sixty-day period, thereby reaping gross proceeds of over $12 million. *See* Robert Roseman Decl. ¶¶ 6–7.[2]

On May 15, 1997, prompted by Canadian securities regulators, defendants admitted that their previous public statements concerning the Ghanan mining results were unreliable and should be disregarded. According to the second amended class action complaint, immediately following this admission, GR's stock price dropped from over $13 per share to a low of less than $1 per share, resulting in substantial losses to plaintiffs and members of the class. *See id.* ¶¶ 8–9.

### B. Proceedings

The original complaint was filed on February 23, 1998. On April 23, 1998, plaintiffs filed a motion to be designated lead plaintiffs and to have their counsel designated lead counsel pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u–4(a)(3)(B). On August 7, 1998, plaintiffs filed their first amended complaint. Soon thereafter, the court denied plaintiffs' motion for the designation of lead plaintiff without prejudice to renewal after the completion of discovery. On September 12, 1998, the court denied defendants' motion to dismiss the first amended complaint, again without prejudice. The plaintiffs filed the second amended class action complaint on March 30, 2000. All complaints alleged substantially the same conduct.

### C. Settlement Discussions

Shortly after the plaintiffs filed their original complaint, counsel engaged in settlement discussions. As a result, plaintiffs' counsel represent that they learned that GR was in poor financial condition and that the individual defendants did not have liability insurance. In connection with these negotiations, plaintiffs' counsel conducted a review of the internal documents produced by the defendants and the financial statements of the individual defendants. Plaintiffs also retained an independent financial advisor to review the materials provided by defendants in order to evaluate properly the financial condition of GR and the individual defendants. Plaintiffs' counsel also interviewed Harper about GR's present condition and future prospects. *See* Roseman Decl. ¶ 19.

### D. Settlement Terms

A Stipulation and Agreement of Settlement memorializing the terms of settlement was signed by the parties and filed with the court on November 30, 1999; the Court preliminarily approved the stipulation by Order dated March 20, 2000.

The settlement create a fund comprised of 1.5 million shares of Golden Rule common stock and warrants to purchase three million shares of Golden Rule common stock, subject to certain conditions.[3] *See* Stip. and Agmt. of Settlement ¶¶ III.B.1, III.C.1. However, if the per share closing price of GR's common stock on the Toronto Stock Exchange equals or exceeds sixty-five Canadian cents on the last trading day immediately preceding the distribution date, the settlement will consist of "the aggregate number of shares of Golden Rule common stock with a total market value on the Toronto Stock Exchange on the distribution date of U.S. nine hundred seventy-five thousand dollars (US$975,000)." *Id.* ¶ III.B.1. Exclusive of the settlement fund, defendants have also provided a fund for the settlement's administrative expenses of up to US$250,000. *Id.* ¶ III.E.1.

The fund will be distributed to a settlement class comprised of all persons and enti-

---

critical component of GR's overall business structure.

**2.** Mr. Roseman is one of plaintiffs' counsel.

**3.** On May 30, 2000, the settlement stock was valued at US$0.10 per share and the settlement warrants were valued at US$0.03 per warrant. *See* Pls.Mem. in Support of Settlement, at 2 n. 1.

ties who purchased GR's common stock during the period from October 3, 1996, through May 30, 1997, inclusive, and who were damaged thereby.[4] *See id.* ¶ I.6. The class shall include purchasers of GR's stock in the United States and in Canada.

## II. Discussion

■ "The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Litig.,* 55 F.3d 768, 784 (3d Cir.1995). Nonetheless, the court has an obligation to ensure that class members' interests have been protected. *See In re Ikon Office Solutions, Inc. Sec. Litig.,* 194 F.R.D. 166, 174 (E.D.Pa.2000). Before approving a settlement, the court must examine whether adequate notice was issued to prospective class members. *See id.;* Fed.R.Civ.P. 23(c)(2). The court must also determine whether a settlement class is properly certified under Federal Rules of Civil Procedure 23(a) and (b)(3). *See In re Gen. Motors,* 55 F.3d at 794–97; *In re Prudential Ins. Co. of Am. Sales Practices Litig.,* 148 F.3d 283, 307–09 (3d Cir.1998). Finally, the court must decide whether the proposed settlement itself is fair to settling parties and relevant third parties. *See* Fed.R.Civ.P. 23(e). Although the court may acknowledge that the proposed class is a settlement class, it may not even reach the fairness question if there is not a proper class and may not substitute the fairness inquiry for the Rule 23(a) and (b) inquiry. *See Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620–21, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *In re Prudential,* 148 F.3d at 308.

### A. Adequacy of Notice

■ In accordance with the court's Order of March 20, 2000, 1,596 copies of a "Notice of Pendency and Settlement of Class Action, of Settlement Hearing, and Right to Appear" were mailed to major brokerage houses, banks, and financial institutions.[5] *See* Kenneth W. Gross Aff. (June 6, 2000) ¶ 6.[6] Additionally, a summary notice was published in *The Wall Street Journal* on April 21, 2000, as well as in Canada's national newspaper, *The Globe and Mail,* on April 28, 2000.[7] *See id.* ¶ 3. On June 5, 2000, after numerous requests, the firm providing settlement administrative services received from GR's transfer agent contact information for 107 people who purchased GR securities during the class period. *See id.* ¶ 4. The notice, as well as a supplemental notice that provided these 107 individuals with an additional thirty days from the June 5, 2000, deadline to respond or object to the settlement, was mailed on June 7, 2000. *See id.,* Ex. B; Gross Supp.Aff. ¶ 2. Counsel represented at the hearing that most of the individual shareholders were company insiders who were excluded from the settlement class and that they were satisfied that 107 persons who received individual notice were all the putative members of the class who could be reasonably identified.

The notice and the summary notice provided detailed information concerning: (a) the rights of the class members, including the manner in which objections could be lodged and the right to opt-out; (b) the nature, history, and progress of the litigation; (c) the proposed settlement; (d) the method of allocating the settlement proceeds; (e) the judg-

---

4. Excluded from the class are the defendants; members of the immediate family of the individual defendants; directors, officers, subsidiaries and affiliates (as such term is defined for United States federal securities law purposes) of GR; any entity in which any excluded person or entity has a controlling interest; and the legal representatives, heirs, successors or assigns of any such excluded person or entity. *See* Stip. and Agmt. of Settlement ¶ I.6.

5. Of these 1,596 notices, 1,232 were sent to institutional groups including banks and brokerage companies, as well as mutual funds, insurance companies, pension funds, and money managers

that may have traded GR stock for their clients' or their portfolios. The remaining 364 were requested by institutional groups and other individuals.

6. Mr. Gross is the president of Valley Forge Administrative Services, Inc., which has been retained to provide administrative services for the settlement.

7. Due to a processing error, the notice in *The Globe and Mail* was not published until April 28, 2000.

ment to be entered; (f) the time and place of the fairness hearing before this court; (g) the manner in which class members could gain access to court papers.

The form of notice used in this case was "reasonably calculated, under [the] circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). The mailing of the notice to identifiable class members and major financial institutions and publication of the summary notice in *The Wall Street Journal* and *The Globe and Mail* was the best means practicable to notify class members and, thus, satisfies Rule 23. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). The notice provides that any class members who do not wish to be a member of the settlement class must submit a written request to be excluded, postmarked no later than June 5, 2000.[8] To date, counsel have not received any objections to the settlement or any requests for exclusion from any class members. Roseman Decl. ¶ 26; Gross Aff. ¶ 7; Gross Supp. Aff. ¶ 3.

### B. Class Certification

The parties seek to certify a settlement class pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3).

#### 1. Rule 23(a)

Rule 23(a) requires that a class satisfy the elements of numerosity, commonality, typicality, and adequacy.

A class must be so "numerous that joinder of all class members is impractical." Fed.R.Civ.P. 23(a)(1); *see also In re Ikon*, 194 F.R.D. 166, 174–75 ("Impracticality does not mean impossibility of joinder and the court should make common sense assumptions on this issue."). The large number of shares involved and the typically small amount of individual damages render securities actions particularly appropriate to class actions. *See*

*Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir.1985). The parties agree that at least 1.8 million shares were sold during the class period and accordingly, the numerosity requirement is easily satisfied.

■ A class must share common questions of law and fact. *See* Fed.R.Civ.P. 23(a)(2). "A finding of commonality does not require that all class members share identical claims, and indeed factual differences among the claims of the putative class members do not defeat certification." *In re Prudential*, 148 F.3d at 310 (citation, punctuation omitted). The plaintiffs have identified the following questions of law and fact that are common to class members: whether the defendants' alleged actions violated federal securities law; whether the statements disseminated by the defendants omitted or misrepresented material facts with respect to GR's financial condition and future prospects; whether the defendants acted with the requisite scienter; and whether the market price of GR's common stock was artificially inflated due to the defendants' alleged omissions and misrepresentations. As the court agrees that these are, in fact, common questions, requirement of commonality is satisfied.

"[T]ypicality entails an inquiry whether the named plaintiff's individual circumstances are markedly different ... or the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based." *Eisenberg*, 766 F.2d at 786 (citation, punctuation omitted). "[T]he typicality requirement will be met if the claims arise from the same event or course of conduct and [are] based on the same legal theory." *In re Regal Comm. Corp. Sec. Litig.*, Civ.A. No. 94–179, 1995 WL 550454, at *4 (E.D.Pa. Sept. 14 1995); *see also In re Scott Paper Co. Sec. Litig.*, 142 F.R.D. 611, 615 (E.D.Pa.1992) (same). Here, there is no difference in the claims advanced by the named plaintiffs and those of other class members: the named plaintiffs and those they seek to represent allege violations of federal securities law stemming from the same course of conduct by the defendants.

---

**8.** As noted, the 107 individuals who were identified by GR's transfer agent had an additional thirty days from June 5, 2000 in which to respond.

The representative parties must also "fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(b)(4). This requirement is met if the interests of the representative plaintiffs are not antagonistic to the interests of the proposed class and if the representative plaintiffs have retained competent counsel. *See In re Prudential;* 148 F.3d at 312; *In re Ikon,* 194 F.R.D. 166, 176–77. The interests of the class representatives are clearly aligned with the other members of the class, and there is no evidence of antagonism between the interests of these individuals and the rest of class. Furthermore, the representative plaintiffs have retained experienced and competent counsel.

### 2. Rule 23(b)(3)

The parties seek certification under Rule 23(b)(3), "which requires that common questions of law or fact predominate over individual questions and that the class action structure be the superior method of managing the case." *In re Ikon,* 194 F.R.D. 166, 177.

The predominance test is readily met in most securities fraud actions. *See In re Prudential,* 148 F.3d at 314, "Confronted with a class of purchasers allegedly defrauded over a period of time by similar misrepresentations, courts have taken the common sense approach that the class is united by a common interest in determining whether a defendant's course of conduct is in its broad outlines actionable, which is not defeated by slight differences in class members' positions, and that the issue may profitably be tried in one suit." *Blackie v. Barrack,* 524 F.2d 891, 902 (9th Cir.1975). As noted in discussing the requirements of Rule 23(a), any case brought by the plaintiffs or putative class members would necessarily address the defendants' alleged misrepresentations and omissions, whether the defendants' acted with the requisite intent, and the effect of the defendants' alleged conduct on the price of GR's stock. The predominance element, therefore, is satisfied.

 A class action must also be "superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). Factors to be examined in determining superiority include:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation in the particular forum; [and] (D) the difficulties likely to be encountered in the management of a class action.

*Id.* Here, as in most securities class actions, "[t]he realistic alternatives to a class action are many scattered suits with possibly contradictory results for some plaintiffs, and, for many more, abandonment of claims." *In re Ikon,* 194 F.R.D. 166, 178; *see also Eisenberg,* 766 F.2d at 785 (acknowledging that, in securities fraud cases, a class action is often the superior means of litigating claims because there may be many injured individuals who have not been damaged to a degree that would induce them to bring their own suits.). The parties have not identified any other litigation concerning the defendants' allegedly fraudulent conduct. While the class contains a number of Canadian members, the inclusion of the named Canadian plaintiff allows the court to exercise jurisdiction over these foreign class members. *See In re Gaming Lottery Sec. Litig.,* 58 F.Supp.2d 62 (S.D.N.Y.1999) (upholding Canadian class and Canadian shareholders as class representative in securities class action); *see also* Stip. and Agmt. of Settlement ¶ III.A.4 (addressing the court's jurisdiction over the Canadian members). The class action is a superior method of addressing this controversy than the prosecution of individual claims.

### C. Fairness

As noted, federal law requires judicial approval of the settlement of a class action lawsuit. Under Rule 23(e) of the Federal Rules of Civil Procedure, the court should approve a class settlement if it is "fair, adequate, and reasonable." *Eichenholtz v. Brennan,* 52 F.3d 478, 482 (3d Cir.1995) (internal citations omitted). The court has considerable discretion in determining whether a proposed settlement meets this standard. *See id.* at 482 (citing *Walsh v. Great Atl. &*

*Pac. Tea Co., Inc.,* 726 F.2d 956, 965 (3d Cir.1983)).

█ A district court must consider the following factors when evaluating the fairness and adequacy of a settlement:

> (1) the complexity, expense and likely duration of the litigation . . .; (2) the reaction of the class to the settlement . . .; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability . . .; (5) the risks of establishing damages . . .; (6) the risks of maintaining the class action through the trial . . .; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery . . .; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation[.]

*Girsh v. Jepson,* 521 F.2d 153, 156 (3d Cir. 1975) (quoting *City of Detroit v. Grinnell Corp.,* 495 F.2d 448 (2d Cir.1974)).

### 1. Complexity, Expense and Duration of the Litigation

█ "This factor is intended to capture the probable costs, in both time and money, of continued litigation." *In re Gen. Motors Corp.,* 55 F.3d at 811. Securities class actions are inherently complex, and this case is no exception. *See In re Ikon,* 194 F.R.D. 166, 179. The many issues stemming from this type of litigation include esoteric financial and economic theories that require an understanding of the securities markets. Concepts such as "fair value," "market inflation," and "market impact" would require the use of experts at trial, leaving the trier of fact to resolve difficult and complex questions. In addition, it is likely that the continued litigation of this matter would be particularly time consuming and expensive since the parties would need to engage in extensive discovery in the United States, Canada, and Ghana. Plaintiffs' counsel anticipates that trying the liability portion of this case alone would run many weeks and would require the introduction of extensive documentary evidence and witness testimony, giving rise to a number of evidentiary issues to be re-solved through motions. *See* Pls.Mem. in Support of Settlement at 17. The costs of trying this matter would substantially burden any recovery obtained for the class, particularly in light of defendants' economic difficulties. Thus, if this case were to be litigated to its conclusion rather than settled, resolution would be complex, time consuming, and expensive. Consideration of this factor weighs in favor of settlement.

### 2. Class Reaction to the Settlement

To date, and despite having been afforded a full opportunity to do so, no class member has objected to the terms of the Settlement. Courts have deemed the attitude of class members toward the settlement of a class action, as evidenced by the absence of objections, as constituting an indication that the settlement is fair and reasonable. *See Fickinger v. C.I. Planning Corp.,* 646 F.Supp. 622, 631 (E.D.Pa.1986) ("[U]nanimous approval of the proposed settlement by the Class members is entitled to nearly dispositive weight."). The absence of any objections argues in favor of approval of the settlement.

### 3. The Stage of Proceedings and Amount of Discovery Completed

The fact that this case is in an early stage of proceedings does not necessarily weigh against approval of the settlement. *See Mashburn v. Nat'l Healthcare, Inc.,* 684 F.Supp. 660, 669 (M.D.Ala.1988) ("The law is clear that early settlements are to be encouraged."). Moreover, the discovery undertaken by the parties, although relatively limited, has focused on the defendants' ability to withstand judgment, an issue that both sides have identified as crucial. Consideration of this factor weighs slightly in favor of approval of the settlement.

### 4. The Risks of Establishing Liability and Damages

In evaluating the risks of establishing liability and damages, the court is to "survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of immediate settlement." *In re Prudential,* 148 F.3d

at 319. However, the court should avoid conducting a "mini-trial and must, to a certain extent, give credence to the estimation of the probability of success proffered by class counsel[.]" *In re Ikon*, 194 F.R.D. 166, 181 (citation, punctuation omitted).

To prevail on their claim that defendants violated section 10(b) and rule 10b–5, plaintiffs bear the burden of proving that defendants were responsible for material misstatements of fact in connection with Golden Rule's stock; that defendants acted with the requisite scienter; that the plaintiffs justifiably relied upon defendants' misconduct; and that the plaintiffs suffered damages as a result of defendants' conduct. *See Hayes v. Gross*, 982 F.2d 104, 106 (3d Cir.1992) (elements of a claim under section 10(b) and rule 10b–5 are a "false representation of a material fact, the defendant's knowledge of its falsity and his intention that the plaintiff rely on it, the plaintiff's reasonable reliance on the representation, and the plaintiff's resulting loss."); *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 280 (3d Cir.1992) (same). For example, plaintiffs would have to establish, *inter alia*, that defendants had, in fact, grossly overstated the quantity and quality of GR's gold findings in its mining operations in Ghana. Plaintiffs would also face difficulty in proving scienter: they have alleged that the individual defendants and other insiders within GR and its subsidiaries had compelling personal financial motives as well as ample opportunity to issue the allegedly materially false and misleading statements about the results of the Ghanian mining operations. Plaintiffs have circumstantial evidence that lends support to their allegations—namely the selling spree by defendants and others of over 1.8 million shares of GR stock during a brief sixty-day period that realized gross proceeds in excess of $12 million. Defendants would challenge the alleged materiality of certain representations and would vigorously assert that they acted in good faith when making the disputed statements. Defendants would argue that, even assuming certain statements or omissions alleged by plaintiffs were actionable, the alleged misstatements or omissions were not made with the intent to defraud. *See* Defs.Mem. in Support of Settlement at 8. Defendants also would argue that neither the

timing nor the amount of the individual defendants' trading was unusual, and it is possible that a jury would believe them. Absent a settlement, plaintiffs' claims are subject to attack, and despite plaintiffs' strong views about defendants' misconduct, plaintiffs' counsel recognized that there was a some risk that a trial would lead to a defense verdict. *See* Pls.Mem. in Support of Settlement at 14–15; Roseman Decl. ¶¶ 28–30.

Similarly, defendants likely would challenge plaintiffs' claims regarding damages. Indeed, the experts' damage calculations would probably vary significantly and therefore generate a "battle of the experts." Plaintiffs' counsel recognize a jury could have been swayed by defense experts who would testify that plaintiffs suffered no loss or a loss much smaller than that described by plaintiffs' expert. *See* Pls.Mem. in Support of Settlement at 15; Defs.Mem. in Support of Settlement at 7–8; *see also e.g., In re Computron Software, Inc.*, 6 F.Supp.2d 313, 320 (D.N.J.1998) (noting the unpredictability of the battle of damage experts). Consideration of the risks faced by plaintiffs in establishing liability and damages weighs in favor of settlement, which eliminates all such risks.

### 5. The Risks of Maintaining the Class Action Through Trial

"The value of a class action depends largely on the certification of the class because, not only does the aggregation of the claims enlarge the value of the suit, but often the combination of the individual cases also pools litigation resources and may facilitate proof on the merits. Thus, the prospects for obtaining certification have a great impact on the range of recovery one can expect to reap from the action." *In re Gen. Motors Corp.*, 55 F.3d at 817; *see also In re Ikon*, 194 F.R.D. 166, 180–81. While decertification is always a possibility in any class action, the parties do not identify any particular issue or circumstance in this case that might led to a particular risk of decertification. Consideration of this factor does not weigh in favor of the settlement, but neither does it weigh against approval.

### 6. The Ability of the Defendants to Withstand a Greater Judgment

Defendants' dire financial condition and the individual defendants' lack of liability insurance weigh strongly in favor of the settlement. Plaintiffs' counsel represent that their investigation of the defendants' finances led them to have serious concerns about the ability of GR and the individual defendants to withstand judgment.[9] Indeed, the grim financial state of the defendants is evident in plaintiffs' counsel's waiver of attorney fees and costs in order to allow for a greater recovery by the class. Consideration of this factor weighs heavily in favor of the settlement. In fact, it is the crucial factor. Without this consideration, both the nature and the amount of the settlement would be questionable and could not be approved.

### 7. The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and in Light of All the Attendant Risks

"In order to assess the reasonableness of a proposed settlement seeking monetary relief, 'the present value of the damages the plaintiffs would likely recover if successful, appropriately discounted for the risks of not prevailing, should be compared with the amount of the proposed settlement.'" *In re Prudential*, 148 F.3d at 322 (quoting *In re Gen. Motors Corp.*, 55 F.3d at 806); *see also In re Ikon*, 194 F.R.D. 166, 183–84 (same). The settlement provides the class with a total recovery of 1.5 million shares of GR common stock and three million warrants to purchase three million shares of common stock. Plaintiffs have valued the aggregate value of settlement fund at $240,000, as of May 30, 2000. *See* Pls.Mem. in Support of Settlement at 2. Plaintiffs' counsel estimate that the best possible recovery for the class members at trial would range from US$2.20 per share to US$2.65 per share. Neither party has estimated the risk of a defense verdict. Given the lack of complete information, the court will assume that this factor weighs against settlement.

### D. Allocation Plan

"Approval of a plan of allocation of a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the distribution plan must be fair, reasonable and adequate." *In re Computron*, 6 F.Supp.2d at 321 (citations, punctuation omitted). A plan of allocation that reimburses class members based on the type and extent of their injuries is generally reasonable. *See id.; see also In re Ikon*, 194 F.R.D. 166, 183–84.

In this case, each class member who files a valid proof of claim will be compensated by receiving a *pro rata* share of the settlement fund based upon the ratio of his or her claim to the total number of valid claims received. *See* Stip. and Agmt. of Settlement ¶ IV.1.a. Such a plan of allocation is fair, reasonable and adequate.

### III. Conclusion

The class members have received adequate notice, and the class is properly certified pursuant to Rules 23(a) and 23(b)(3). In light of the facts of this case and after consideration of the *Girsh* factors, particularly the company's shaky financial condition and the lack of any liability insurance for the directors and officers, the court concludes that the proposed settlement is fair, reasonable, and adequate.

A final judgment and order of dismissal follows.

### FINAL JUDGMENT AND ORDER OF DISMISSAL

This matter is before the Court on the Parties' proposed class action settlement. The Parties have submitted a Stipulation and Agreement of Settlement dated November 30, 1999 (the "Stipulation") that sets forth the terms and conditions for a settlement and dismissal of the Action with prejudice. Having read and considered the Stipulation (the defined terms of which are incorporated

---

**9.** Plaintiffs allege that certain insiders who are not named in this suit received the majority of the proceeds from the sixty-day selling spree in which 1.8 million shares of allegedly artificially inflated stock were sold. *See* 2d Amend.Compl. ¶ 59.

herein), including the exhibits annexed thereto, and having conducted a settlement hearing on June 20, 2000, pursuant to the Preliminary Approval Order of March 20, 2000 (the "Preliminary Order"), and the Parties having applied for approval of the Settlement as set forth in the Stipulation, and due and adequate notice having been given to the Settlement Class, it is

ORDERED and ADJUDGED as follows:

1. This Court has jurisdiction over the subject matter of the Action and over all Parties to the Action, including all Settlement Class Members.

2. This Court approves the Settlement of the Action on the terms and conditions provided for in the Stipulation, finds that the Settlement is, in all respects, fair, reasonable, and adequate, and that it confers substantial benefits upon the Settlement Class, and that it is in the best interest of the Settlement Class and, therefore, directs that it be effectuated in accordance with its terms.

3. The proposed Settlement Class is finally certified pursuant to the Stipulation and under Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure for settlement purposes only as follows:

> All persons and entities who purchased the common stock of Golden Rule during the period from October 3, 1996 through May 30, 1997 inclusive (the "Class Period") and who were damaged thereby. Excluded from the Class are defendants herein, members of the immediate family of the Individual Defendants, directors, officers, subsidiaries and affiliates of Golden Rule, any entity in which any excluded person or entity has a controlling interest, and the legal representatives, heirs, successors or assigns of any such excluded person or entity.

Also excluded from the Settlement Class are those persons who have submitted valid and timely requests for exclusion pursuant to the Preliminary Order and the Notice sent to the members of the Settlement Class. To date, and despite having been afforded a full opportunity to do so, no Class member has objected to the terms of the Settlement.

4. Plaintiffs Herman Krangel, Lillian Krangel, and Juhl Skjerris are appointed Settlement Class Representatives. For settlement purposes, the requirements of Federal Rule of Civil Procedure 23(a) have been met and Plaintiffs' Counsel have fairly and adequately represented and protected the interest of the Settlement Class.

5. As of the Effective Date of the Settlement, and subject to the terms and conditions of the Stipulation, this Court dismisses on the merits and with prejudice the Second Amended Class Action Complaint (the "Amended Complaint") and each and every Settled Claim of each and every plaintiff and Settlement Class Members against each and all of the Released Persons.

6. "Settled Claims" means all actions, suits, causes of action, rights, demands, and claims, whether known or unknown, including without limitation Unknown Claims, as hereinafter defined, that the Representative Plaintiffs, the Settlement Class, Settlement Class Members, or any of them (whether acting individually, as a class, directly, derivatively, or in a representative capacity) now have, in the past had, or might in the future have against the Release Persons, or any of them, based on, arising out of, or related to the matters alleged in the Action including, without limitation: (i) all actions, suits, causes of action, rights, demands and claims based on or arising under United States federal or state, or Canadian, statute, law, or regulation, or based on or arising under United States federal or state, or Canadian, common law, or for the breach or violation of any duty arising thereunder; (ii) all claims that were asserted or that could have been asserted in the Action by the Representative Plaintiffs of the Class or any member thereof; or (iii) all actions, suits, causes of action, rights, demands, and claims for injunctive relief or any other for of equitable remedy or relief.

7. "Unknown Claims," as used in the definition of Settled Claims, means all actions, suits, causes of action, rights, demands, and claims of every nature and description that arise out of the facts alleged by Plaintiffs in this Action and that the Representative Plaintiffs or any of the Settlement Class

Members do not know of or suspect to exist in their favor at the time of the release of the Released Persons, which, if known by them, might have affected their agreement to the Settlement.

8. "Released Persons" means Defendants and their respective present and former officers, directors, employees, agents, attorneys, accountants, financial advisors, commercial bank lenders, investment bankers, insurers, representatives, affiliates, associates, parents, subsidiaries, general and limited partners and partnerships, heirs, executors, administrators, successors and assigns. For purposes of this definition, Released Persons includes Hixon Gold Resources, Inc. and its present and former officers, directors, employees, agents, attorneys, accountants, financial advisors, commercial bank lenders, investment bankers, insurers, representatives, affiliates, associates, parents, subsidiaries, general and limited partners and partnership, heirs, executors, administrators, successors and assigns.

9. As of the Effective Date of the Settlement, all Settlement Class Members and Representative Plaintiffs in the Action are forever barred and enjoined from asserting or prosecuting the Settled Claims against any of the Released Persons.

10. As of the Effective Date of the Settlement, the Released Persons are forever released and discharged with respect to any and all Settled Claims.

11. The Defendants are hereby discharged from all claims for contribution brought by other persons. The Court also bars all future claims for contribution arising out of this Action (a) by any person against the Defendants and (b) by the Defendants against any person, other than a person whose liability has been extinguished by the Settlement or Stipulation. The Defendants are hereby finally discharged of all obligations to the Plaintiffs and Settlement Class Members arising out of this action.

12. The Notice of the Settlement and of other matters set forth therein given to the Settlement Class pursuant to the Preliminary Order was the best notice practicable under the circumstances, including individual notice to all Settlement Class Members who could be identified through a reasonable effort, as well as valid, due, and sufficient notice to all persons entitled thereto, and complies fully with the requirements of Fed.R.Civ.P. 23, the Constitution of the United States, the Private Securities Litigation Reform Act of 1995, and any other applicable law.

13. Without affecting the finality of this judgement in any way, this Court hereby retains continuing jurisdiction over: (a) implementation and administration of the Settlement; (b) distribution of the Settlement Fund; (c) determination of any other applications for payments out of the Settlement Fund; and (d) all Parties hereto for the purpose of enforcing and administering the Stipulation and accompanying exhibits in the Action until each and every act agreed to be performed by the Parties has been performed. The Court shall maintain continuing jurisdiction over the Representative Plaintiffs and all Settlement Class Members for purposes of enforcing Paragraph 6 above.

14. No Authorized Claimant shall have any claim against Plaintiffs' Counsel, Valley Forge Administrative Services, Inc., or any other agent designated by Plaintiffs' Counsel based on the distribution made substantially in accordance with the Settlement as approved by the Court and further orders of this Court. No Authorized Claimant shall have any claim against Defendants, Defendants' Counsel, or any of the Released Persons whatsoever with respect to the distribution of the Settlement Fund, the determination, administration, calculation, or payment of claims, or any losses incurred in connection therewith, or the giving of notice to Settlement Class.

15. This Order is binding on all Settlement Class Members.

16. Neither this Final Judgement and Order of Dismissal, the Stipulation, the Settlement, nor any acts performed and documents executed pursuant to or in furtherance of the Stipulation and Settlement: (a) is or may be deemed to be, or may be used as an admission of, or evidence of, the validity of any Released Claim, or of any alleged wrongdoing or liability of the Defendants, or any of them; or (b) is or may be deemed to be or

may be used as an admission of, or evidence of, any alleged fault or omission of the Defendants, or any of them, in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal, other than in such proceedings as maybe necessary to consummate or enforce the Stipulation, the Settlement, or the Judgement, except that if the Stipulation becomes effective, any of the Defendants and other Released Persons may file the Stipulation or the Judgement in any action that may be brought against them in order to support a Claim, defense, or counterclaim based on the principles of *res judicata*, collateral estoppel, release, judgement bar or reduction, or any other theory of Claim or issue preclusion or similar Claim, defense, or counterclaim.

17. The Court finds that the Parties, Plaintiffs' Counsel, and Defendants' Counsel have complied in all respect with Federal Rule of Civil Procedure 11(b) in connection with the filing of all complaints, responsive pleadings, and dispositive motions in the Action.

18. The Court, having considered certain of Golden Rule United States Securities and Exchange Commissions filings, the nature of the Golden Rule Settlement Stock and Settlement Warrants to be issued in connection with and pursuant to the Settlement and Stipulation, and other information concerning Golden Rule, finds that the Settlement and Stipulation is fair to the Settlement Class, to Golden Rule, and to other interested persons and, accordingly, holds that the Settlement Stock and Settlement Warrants to be issued in connection with and pursuant to the Settlement and Stipulation are exempt from registration under the Securities Act of 1933 (the "Securities Act") pursuant to Section 3(a)(10) of the Securities Act, 15 U.S.C. § 77c(a)(10).

19. The Parties shall bear their own costs and expenses, except as otherwise provided in the Stipulation or in this Order.