## In re DAIMLERCHRYSLER AG SECURITIES LITIGATION.

**Tracinda Corporation, a Nevada Corporation, Plaintiff,**

v.

**DaimlerChrysler AG, a Federal Republic of Germany corporation; Daimler–Benz AG, a Federal Republic of Germany corporation; Juergen Schrempp, a citizen of the Federal Republic of Germany; and Manfred Gentz, a citizen of the Federal Republic of Germany, Defendants.**

**Glickenhaus & Co., et al., Plaintiffs,**

v.

**DaimlerChrysler AG, et al., Defendants;**

**Nos. CIV.A.00–993, 00–984, 01–004–JJF.**

United States District Court,
D. Delaware.

June 11, 2003.

As Corrected Oct. 28, 2003.

Carmella P. Keener, Esquire of Rosenthal, Monhait, Gross & Goddess, P.A., Wilmington, DE. Of Counsel: Richard Bemporad, Esquire and Thomas M. Skelton, Esquire of Lowey, Dannenberg, Bemporad & Selinger, P.C., White Plains, NY, for Glickenhaus Plaintiffs.

A. Glichrist Sparks, III, Esquire, Alan J. Stone, Esquire, and Jessica Zeldin, Esquire of Morris, Nichols, Arsht & Tunnell, Wilmington, DE. Of Counsel: Terry Christensen, Esquire and Mark G. Krum, Esquire of Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP, Los Angeles, CA, Douglas H. Flaum, Esquire, Julie E. Kamps, Esquire and Midwin Charles, Esquire of Fried, Frank, Harris, Shriver & Jacobson, New York City, for Plaintiff Tracinda Corporation.

Jay W. Eisenhofer, Esquire, Abott A. Leban, Esquire, and Richard M. Donaldson, Esquire of Grant & Eisenhofer, P.A., Wilmington, DE. Of Counsel: Vincent R. Cappucci, Esquire, Stephen D. Oestreich, Esquire, Johnston de F. Whitman, Jr., Esquire of Entwistle & Cappucci LLP, Jeffrey A. Klafter, Esquire and Paul Ryan, Esquire of Bernstein, Litowitz, Berger & Grossmann LLP, New York City, Jeffrey W. Golan, Esquire, Jeffrey A. Barrack, Esquire and David E. Robinson, Esquire of Barrack, Rodos & Bacine, Philadelphia, PA, for Co–Lead Plaintiffs, The Florida State Board of Administration, Municipal Employees Annuity and Benefit Fund of Chicago, Denver Employees Retirement Plan, Policemen's Annuity and Benefit Fund of Chicago, and Municipal Employees Annuity and Benefit Fund of Chicago.

Thomas J. Allingham II, Esquire and Robert S. Saunders, Esquire, of Skadden, Arps, Slate, Meagher & Flom LLP, Wilmington, DE. Of Counsel: Jonathan J. Lerner, Esquire, Lea Haber Kuck, Esquire and Joseph N. Sacca, Esquire of Skadden, Arps, Slate, Meagher & Flom LLP, New York City, for Defendants DaimlerChrysler AG, Daimler–Benz AG, Jürgen Schrempp and Manfred Gentz.

### OPINION

FARNAN, District Judge.

Pending before the Court is a Motion For Class Certification (D.I.311) filed by Florida State Board of Administration ("FSBA"), Municipal Employees and Benefit Fund of Chicago ("MEABF"), and Denver Employees Retirement Plan ("DERP") (together "Lead Plaintiffs"). By their Motion, Lead Plaintiffs move the Court to certify a class defined as (1) all persons who exchanged shares of Chrysler Corporation ("Chrysler") for shares of DaimlerChrysler AG ("DaimlerChrysler") in connection with the November 1998 merger of Chrysler and Daimler–Benz AG into DaimlerChrysler, and (2) all persons who purchased or acquired shares of Daimler-Chrysler in the open market from the time of the merger through November 17, 2000. In addition, Lead Plaintiffs request the Court to enter an Order appointing Lead Plaintiffs as Class Representatives and Grant & Eisenhofer, P.A., Entwistle & Cappucci LLP, Bernstein Litowitz & Grossman LLP and Barrack Rodos & Bacine as Class Counsel. For the reasons discussed, the Court will grant Lead Plaintiffs' Motion with the exception of their request to include foreign investors in the class.

### BACKGROUND

The background relevant to this action has been set forth fully in the Court's previous Opinions in this matter. *In re Daimler-Chrysler AG Sec. Litig.*, 197 F.Supp.2d 86 (D.Del.2002); *In re DaimlerChrysler AG Sec. Litig.*, 197 F.Supp.2d 42 (D.Del.2002). By way of general summary, this action is predicated upon the 1998 merger of Chrysler and Daimler–Benz to form DaimlerChrysler AG, a Federal Republic of Germany corporation. By their Amended Complaint, Lead Plaintiffs contend that Daimler–Benz characterized the transaction as a "merger of equals" in which both companies would be combined with equal power, management and governance and would have dual headquarters in the United States and Germany. The "merger of equals" representations were made in press releases, as well as in the Proxy/Prospectus.

Lead Plaintiffs contend that the merger of equals never occurred, and that Defendants used this concept to mislead Chrysler shareholders into approving the merger. Lead Plaintiffs contend that Daimler–Benz always intended to acquire Chrysler as a division of DaimlerChrysler, and never intended the transaction to be a merger of equals. As a result of this alleged continuous scheme to

relegate Chrysler to a division of Daimler–Benz, Lead Plaintiffs contend that the proposed class suffered injuries through and including November 17, 2000.

## DISCUSSION

### I. Standard For Class Certification

The party seeking class certification bears the burden of establishing that certification is warranted under the circumstances. *In re ML–Lee Acquisition Fund II, L.P. Sec. Litig.*, 848 F.Supp. 527, 557 (D.Del.1994). Rule 23 of the Federal Rules of Civil Procedure sets forth the requirements for certification of a class. Pursuant to Rule 23(a), four requirements must be met in order for a class to be certified. *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 613, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). These requirements are:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a).

In addition to the four requirements of Rule 23(a), plaintiffs seeking class certification must also satisfy one of the three requirements in Rule 23(b). In this case, the applicable requirement is Rule 23(b)(3), which requires the Court to find that: "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).

### II. Whether Plaintiffs Have Satisfied The Requirements For Class Certification

#### A. *The Requirements Of Rule 23(a)*

##### 1. Numerosity

■ The requirement that potential class members be so numerous as to make joinder of all members "impractical" does not establish a rigid minimum number of class members necessary to warrant certification; rather, joinder of all members need only be impractical, not impossible. *In re Life USA Holding, Inc.*, 190 F.R.D. 359, 365 (E.D.Pa.2000), *rev'd on other grounds*, 242 F.3d 136 (3d Cir.2001). Among the factors to consider with respect to the numerosity requirement are (1) the size of the class, (2) the expediency of joinder, and (3) the practicality of multiple lawsuits. *ML–Lee*, 848 F.Supp. at 558. The purpose of the numerosity requirement is to ensure that a class is certified only when the circumstances make certification a necessity. *See e.g. In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir.1996).

According to Lead Plaintiffs, the exact number of record or beneficial shareholders is unknown to them at this time and can only be ascertained from the books and records maintained by Defendants. However, Lead Plaintiffs contend that approximately seven hundred million Chrysler shares were exchanged for DaimlerChrysler shares in the Merger and many millions of shares of DaimlerChrysler were purchased from November 13, 1998 to November 17, 2000 (the "Class Period"). (Am.Compl.¶ 99). As such, Lead Plaintiffs contend that the number of class members is likely to be in the thousands. Defendants have not challenged Lead Plaintiffs' assertion that the numerosity requirement is satisfied. Accordingly, the Court finds that Lead Plaintiffs have satisfied the numerosity requirement of Rule 23(a). *See e.g. Eisenberg v. Gagnon*, 766 F.2d 770, 785–786 (3d Cir.1985), *cert. denied sub nom., Wasserstrom v. Eisenberg*, 474 U.S. 946, 106 S.Ct. 342, 343, 88 L.Ed.2d 290 (1985) (finding that allegations of more than 90 class members satisfied numerosity requirement); *Malloy v. Eichler*, 628 F.Supp. 582, 590 (D.Del.1986) (finding that numerosity requirement was met where class consisted of at least 30 people, with an unknown number of additional plaintiffs in unresearched cases).

##### 2. Commonality

■ Lead Plaintiffs are next required to show that there are questions of law or fact common to the class. This requirement is

satisfied by a showing that "the questions of law or fact linking the class members are substantially related to the resolution of the litigation, even though the individuals are not identically situated." *Deutschman v. Beneficial Corp.*, 132 F.R.D. 359, 372 (D.Del.1990) (citations omitted). In securities fraud class actions, "questions of misrepresentation, materiality and scienter are the 'paradigmatic common question[s] of law or fact ...'" *Id.* (citations omitted). Further, the commonality requirement "has been permissively applied in the context of securities fraud class actions." *Id.*

In this case, the Court finds that the commonality requirement is satisfied. The common questions of law and fact in this case are the paradigm of those present in a securities fraud class action, including (1) whether Defendants violated Sections 11, 12 and 14 of the Securities Act and Sections 10(b), 14(a) and 20 of the Securities Exchange Act; (2) whether Defendants made misrepresentations or omissions of material fact regarding the characterization of the merger as a merger of equals in the Proxy/Prospectus and to the investing public; (3) whether Defendants acted knowingly or recklessly in making the alleged false and misleading statements or in concealing their wrongdoing; and (4) whether the market price of DaimlerChrysler common stock was artificially inflated or distorted during the Class Period due to Defendants' conduct.

Defendants contend that commonality cannot be satisfied in this case because of four internal conflicts among the members of the proposed class.[1] Specifically, Defendants contend that: (1) an Acquirer class cannot be certified, because the factual allegations of the Amended Complaint preclude the Acquirers from relying on the efficient market theory; (2) an Exchanger class cannot be certified because there are individual questions of reliance; (3) there is a conflict between equity plaintiffs who maintained their stake in DaimlerChrysler AG and selling plaintiffs

who no longer own shares of DaimlerChrysler AG; and (4) there is a conflict between "retention plaintiffs" who held stock throughout the Class Period and "in/out" plaintiffs who sold their shares before the end of the Class Period.

■ After reviewing the applicable case law in light of the facts and circumstances of this case, the Court concludes that the alleged conflicts are either not conflicts which preclude class certification, or are conflicts which may be addressed by the creation of subclasses. To the extent that Defendants contend that individual questions of reliance preclude certification of an Exchanger class, the Court disagrees with Defendants. First, the Exchangers allege Section 11 and Section 12(a)(2) claims against the Defendants which do not require the Exchangers to establish reliance. *In re DaimlerChrysler AG*, 197 F.Supp.2d at 64. Second, to the extent that questions of reliance permeate the Exchangers remaining claims, courts have concluded that questions of reliance are not relevant to the determination of class certification and should not be used as an impediment to class certification.[2] *See e.g. Shamberg v. Ahlstrom*, 111 F.R.D. 689, 697–698 (D.N.J.1986) (recognizing that "individual questions of reliance are 'not an impediment' to class certification" and are "irrelevant to class determination", because "[r]eliance is an issue lurking behind every securities fraud claim, and to require that it first be proven, would effectively negate the concept of a 10b–5 class action"); *In re Data Access Sys. Sec. Litig.*, 103 F.R.D. 130, 139–140 (D.N.J.1984) (holding that nonreliance is an affirmative defense, which should not be considered on a class certification motion). Accordingly, the Court concludes that class certification should not be denied on the basis of individual reliance issues.

■ Defendants also suggest that an Acquirer class cannot be certified because the

---

1. Defendants' arguments regarding internal conflicts in the class are also relevant to the typicality and adequacy requirements for class certification.

2. *See also Walsh v. Northrop Grumman Corp.*, 162 F.R.D. 440 (E.D.N.Y.1995) (certifying a class asserting both Section 10(b) and Section 14(a) claims involving reliance issues); *Booth v. Connelly Containers, Inc.*, 1990 WL 61333 (E.D.Pa. May 7, 1990) (same).

Acquirers need to rely on the "fraud-on-the-market doctrine" to establish a rebuttable presumption of reliance. To rely on this doctrine, the plaintiffs must show that they "purchased or sold securities in an efficient market." *Semerenko v. Cendant Corp.*, 223 F.3d 165, 178 (3d Cir.2000). Defendants contend that a conflict exists in this case, because the Exchangers' claims are predicated upon the idea that the market was inefficient. According to Defendants, the Exchangers' injury is that they were forced to forgo an "acquisition premium" when they exchanged Chrysler shares for DaimlerChrysler stock in the Merger. To explain the premium they did receive and maximize the damages they seek, Defendants contend that the Exchangers have taken the position that the market undervalued Chrysler stock before the time of its Merger with Daimler–Benz.

After reviewing Defendants' allegations in light of the Amended Complaint, the Court concludes that there is not a conflict between the Acquirers and the Exchangers based on the efficiency of the market which would preclude class certification. With respect to the Acquirers, the Lead Plaintiffs seek to certify a class on behalf of those persons who acquired shares of DaimlerChrysler shares in the open market *after* the merger. In contrast, the Exchangers' claims are based upon the market value for Chrysler shares at the time of the merger. Specifically, the Exchangers seek to recover an acquisition premium, the value of which would have been crystalized at the time of the merger in November 1998. As such, the Exchangers' claims are not affected by any alleged fraud which may have artificially inflated stock prices of DaimlerChrysler stock following the merger. Thus, in the Court's view, allegations regarding the efficiency or lack of efficiency of the Chrysler market are irrelevant to the Acquirers' claims and do not raise a conflict between the Acquirers and Exchangers which would preclude class certification.

■ As for Defendants' argument that there is a conflict between equity plaintiffs and selling plaintiffs and retention plaintiffs and in/out plaintiffs, the Court concludes that such alleged conflicts are insufficient to preclude class certification. Defendants' argument that these conflicts are fatal to class certification is premised upon the decision of the Northern District of California in *In re Seagate Tech. II Sec. Litig.*, 843 F.Supp. 1341 (N.D.Cal.1994). However, the rationale of the *Seagate* decision has been repeatedly rejected by courts in this Circuit. *See e.g. In re Honeywell Int'l Inc. Sec. Litig.*, 211 F.R.D. 255, 261 (D.N.J.2002); *In re Lucent Tech., Inc., Sec. Litig.*, 194 F.R.D. 137, 153 n. 20 (D.N.J.2000); *Weikel v. Tower Semiconductor Ltd.*, 183 F.R.D. 377, 395 (D.N.J. 1998); *In re Intelligent Elec., Inc. Sec. Litig.*, 1996 WL 67622, *5 (E.D.Pa. Feb.13, 1996).[3] Further, the Court believes that any issue posed by the juxtaposition of these plaintiffs can be adequately dealt with by changing the class certification structure to include subclasses, if the parties deem such subclasses to be necessary as this litigation progresses. *In re Cendant Corp. Litig.*, 264 F.3d 201, 243–244 & n. 25 (3d Cir.2001) (recognizing in dicta that conflicts between retention and in/out plaintiffs can be addressed by the creation of subclasses); *see also* Fed.R.Civ.P. 23(c)(1) (stating that an order certifying a class "under this subdivision may be conditional, and may be altered or amended before the decision on the merits"); *Barnes v. The American Tobacco Co.*, 161 F.3d 127, 140 (3d Cir.1998) (stating that "District Courts are required to reassess their class rulings as the case develops").

In sum, the Court is not persuaded that internal conflicts exist which would preclude

---

**3.** That class certification is precluded by the conflict between sellers and plaintiffs who continue to hold stock has also been rejected by courts outside of this Circuit. *In re Gemstar–TV Guide Int'l, Inc. Sec. Litig.*, 209 F.R.D. 447, 453 (C.D.Cal.2002); *In re Oxford Health Plans, Inc.*, 191 F.R.D. 369, 378 (S.D.N.Y.2000); *Spicer v. Chicago Bd. Options Exch., Inc.*, 1990 WL 16983, *8 (N.D.Ill. Jan.31, 1990). Indeed, the Court agrees with these courts that using this ground as a basis to reject class certification would undermine the use of the class certification mechanism in securities actions and lead to the systematic disqualification of large investors and institutions from serving as lead plaintiffs, a result which is at odds with the intent of the PSLRA. *See In re Vesta Ins. Group, Inc. Sec. Litig.*, No. 98–AR–1407–S, mem. op. at 21–23 (N.D.Ala. Oct. 25, 1999).

the Court from certifying the proposed class. Common issues of law and fact predominate in this case, and those issues are typical of the issues in all securities litigation. To the extent that subclasses may be necessary to address certain issues, the Court retains the flexibility to modify the class structure as needed and requested by the parties.

### 3. Typicality

■ To satisfy the typicality requirement of Rule 23(a)(3), the plaintiffs must show that the class representatives are "part of the class and 'possess the same injury' as the class members." *East Texas Motor Freight System, Inc. v. Rodriguez,* 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977) (citations omitted). "A representative's claim is typical if it arises from the same event, practice, or conduct that gives rise to the claim of the other class members, and is based on the same legal theory." *Wilmington Firefighters Local 1590 v. City of Wilmington,* 109 F.R.D. 89, 93 (D.Del.1985) (citations omitted). The purpose of the typicality requirement is to ensure that the interests of the named plaintiffs are aligned with the absent members of the class, so as to ensure that the absent members of the class will be fairly represented in the litigation. *Baby Neal v. Casey,* 43 F.3d 48, 58 (3d Cir.1994). Where the plaintiffs' claims arise from the same event, practice or conduct and is based upon the same legal theory, factual differences among the class members will not be sufficient to render the claim atypical. *Id.* (citations omitted).

In this case, the Court concludes that Lead Plaintiffs have established that their claims are typical of the claims of other class members. Lead Plaintiffs have exchanged Chrysler shares for DaimlerChrysler shares in the Merger, purchased DaimlerChrysler shares on the open market after the merger, or done both types of transactions. (Am. Compl.¶¶ 9–12). In addition, Lead Plaintiffs' claims are based on the same allegedly false and misleading statements made by Defendants both before and after the merger that

the merger was supposed to be a "merger of equals."

■ Defendants challenge the typicality requirement only as it pertains to Lead Plaintiff FSBA.[4] Specifically, Defendants contend that FSBA: (1) lacks standing to pursue its claim; (2) engaged in atypical trading strategies, (3) increased its shares during the time that the fraud became public, and (4) is a "professional plaintiff" such that it will be distracted from monitoring this lawsuit. After reviewing Defendants' allegations in light of the circumstances of this case, the Court is not persuaded that FSBA should be precluded from serving as a Lead Plaintiff. It appears to the Court that FSBA is only advanced as a Lead Plaintiff for the Exchangers. FSBA voted its shares in connection with the Merger and its representative, Mr. McCauley, analyzed the Proxy/Prospectus and other materials regarding the merger in determining how to vote its shares. (D.I. 527, Ex. 2 at 90:19–25, 92:5–17, 122:17–123:6, 132:22–133:13, 133:22–134:7). Thus, its post-merger trading strategies and its subsequent investments in DaimlerChrysler are irrelevant to their representation of the Exchangers.

Further, even if FSBA were proffered as a representative for the Acquirers, the Court would conclude that their investment strategies are not sufficient to preclude their service as class representative. Courts have repeatedly recognized that it is a common investment strategy for entities to engage in subsequent purchases in order to decrease the average cost of their investment, and therefore, such investment strategies are not atypical for purposes of satisfying the requirements for class certification. *See e.g. Garfinkel v. Memory Metals, Inc.,* 695 F.Supp. 1397, 1404 (D.Conn.1988), *Kronfeld v. Trans World Airlines, Inc.,* 104 F.R.D. 50, 53 n. 4 (S.D.N.Y.1984).

■ The Court is also not persuaded by Defendants' argument that FSBA lacks standing to serve as a class representative, because it held its shares of Chrysler and

---

4. To the extent that Defendants allege that intra-class conflicts prevent the Lead Plaintiffs from satisfying the typicality requirement, the Court rejects Defendants' argument for the reasons set forth in its commonality analysis.

DaimlerChrysler for the benefit of Florida Retirement System Trust Fund and the Lawton Chiles Endowment Fund. Pursuant to a comprehensive statutory scheme under Florida law, FSBA has the authority to make investment decisions for these funds. (D.I. 527, Ex. 1 at ¶ 1, 3) (citing F.S.A. § 215.5601(3)(a), (4)(a); F.S.A. § 121.151). Although Defendants direct the Court to several cases supporting their position that investment advisors lack standing to sue under the securities law, the Court observes that more recent cases, including a very recent decision in this Circuit by the Western District of Pennsylvania, have concluded that investment advisors with the authority to make investment decisions for their clients are "purchasers" for purposes of the securities laws such that they have standing. *The EZRA Charitable Trust v. Rent–Way, Inc.,* 136 F.Supp.2d 435, 442–444 (W.D.Pa.2001) (collecting cases); *Medline Indus., Inc. Employee Profit Sharing and Ret. Trust v. Blunt, Ellis & Loewi, Inc.,* 1993 WL 13436, *2 (N.D.Ill. Jan. 21, 1993) (holding that the actual source of invested funds and the name on the account is not determinative, but that the level of involvement in the investment decision is key to qualifying as a purchaser).

■ Defendants next contend that FSBA should be disqualified from being appointed a lead plaintiff because it is a "professional plaintiff." Specifically, Defendants contend that FSBA is currently serving as lead plaintiff in at least eight securities actions. In support of their position, Defendants also maintain that several courts have questioned FSBA's capacity to monitor all of the litigation in which it is involved. (D.I. 466 at 25). Restrictions on professional plaintiffs serving as lead plaintiffs in a securities action are set forth 15 U.S.C. § 78u–4(a)(3)(B)(vi) as follows:

> Except as the court may otherwise permit, consistent with the purposes of this section, a person may be a lead plaintiff, or an officer, director, or fiduciary of a lead plaintiff, in no more than 5 securities class actions brought as plaintiff class actions pursuant to the Federal Rules of Civil Procedure during any 3–year period.

The plain language of this section expressly recognizes that courts have discretion to depart from the prohibition in certain circumstances. These circumstances are illuminated by the relevant legislative history which expresses a clear Congressional intent to exempt institutional investors from the professional plaintiff restrictions. H.R. Conf. Rep. No. 104–369, U.S.Code Cong. & Admin.News 1995, pp. 679, 734 ("Institutional investors seeking to serve as lead plaintiff may need to exceed this limitation and do not represent the type of professional plaintiff that this legislation seeks to restrict.") Consistent with this legislative intent, the majority of courts applying the professional plaintiff restriction have concluded that the restriction does not apply to institutional investors. *Smith v. Suprema Specialties, Inc.,* 206 F.Supp.2d 627, 640–641 (D.N.J.2002) (collecting cases). The Court agrees with the rationale of these decisions. Further, the Court observes that FSBA has been quite attentive to this litigation since its inception, thereby dispelling any concern that FSBA is distracted by its role in other cases. Accordingly, the Court is not persuaded that FSBA should be prohibited from serving as a lead plaintiff in this case on the basis of its involvement as lead plaintiff in other pending securities actions.

### 4. Adequacy of Representation.

■ Under Rule 23(a)(4), adequate representation requires a showing that (1) the plaintiffs' attorneys are qualified, experienced, and able to conduct the litigation, and (2) the representative plaintiffs' interests are not antagonistic to those of the class. *Wetzel v. Liberty Mut. Ins. Co.,* 508 F.2d 239, 247 (3d Cir.1975). Courts have declined to certify a class where the proposed lead plaintiffs have little or no supervisory role in the litigation and little knowledge of the underlying facts of the law suit. *See e.g. Butterworth v. Quick & Reilly, Inc.,* 171 F.R.D. 319, 322 (M.D.Fla.1997); *Rolex Employees Retirement Trust v. Mentor Graphics Corp.,* 136 F.R.D. 658, 666 (D.Or.1991); *Kelley v. Mid–America Racing Stables, Inc.,* 139 F.R.D. 405, 409–410 (W.D.Okla.1990).

In examining the typicality requirement, the Court has previously concluded that the interests of the representative plaintiffs are aligned with the interests of the class. Lead Plaintiffs advance claims similar to those of other members of the class, and the Court cannot conclude that their interests are antagonistic to the interests of the class. As for the qualifications of Lead Plaintiffs' attorneys, the Court likewise finds that Lead Plaintiffs' attorneys are well qualified and highly experienced such that they can adequately conduct this litigation and represent the interests of the class.

Defendants contend that Lead Plaintiffs are not adequate representatives of the class, because their participation in this litigation is minimal, and the lawsuit has been lawyer-driven such that Lead Plaintiffs are ignorant of the facts and merely "rubber stamp the pre-packaged litigation decisions of class counsel." (D.I. 466 at 27–28). In support of their allegations, Defendants direct the Court to the deposition testimony of certain representatives of Lead Plaintiffs.

This Court has previously recognized that plaintiffs in this Circuit are held to a "very minimal requirement of knowledge about the litigation and the facts upon which it is based." *ML–Lee*, 848 F.Supp. at 559–560. After reviewing the proffered deposition testimony of Lead Plaintiffs' representatives, the Court finds that they have sufficient understanding and knowledge of the legal basis and factual allegations underlying this action such that they are adequate representatives of the class under Rule 23(a)(4).

### B. *Rule 23(b)(3) Requirements*

#### 1. Common questions of law and fact

■ Rule 23(b)(3) requires that common issues predominate over any issues that may be particular to individual class members. *See Deutschman*, 132 F.R.D. at 374. As the Court has discussed in the context of the commonality requirement, common questions of law and fact involving violations of the securities laws based upon misrepresentations and omissions made uniformly to the entire class exist in this lawsuit and predominate over any individual questions of reliance that may exist. Accordingly, the Court concludes that Lead Plaintiffs have established this requirement of class certification.

#### 2. Superiority of the class action to numerous individual actions

■ In addition to common questions of law and fact, Rule 23(b)(3) requires the class action to be superior to other available methods for litigating the claims. In making this assessment, the Court should consider:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(b)(3). Class actions are favored in securities fraud cases in this Circuit. To this effect, the Third Circuit has stated, "[T]he interests of justice require that in a doubtful case ... any error, if there is to be one, should be committed in favor of allowing a class action." *Deutschman v. Beneficial Corp.*, 132 F.R.D. 359 (D.Del.1990).

Evaluating the Rule 23(b)(3) factors in light of the circumstances of this case and the policy favoring class actions in this Circuit, the Court concludes that the class action is the superior method for litigating this dispute. As the Court in *Deutschman* recognized, "the class action device is especially appropriate in securities fraud cases ... wherein there are many individual plaintiffs who suffer damages too small to justify a suit against a large corporate defendant." 132 F.R.D. at 378. In this case, there are numerous plaintiffs with potential damages against Defendants, and the Court believes that the consolidation of these plaintiffs into a class is the most desirable and practical means for managing this litigation.

Defendants contend that the class method is not superior because there are several difficulties which are likely to be encountered in managing the action if foreign investors are included as members of the class.

Defendants contend that there is a significant likelihood that foreign courts will not recognize and enforce a United States judgment, and therefore, Defendants may be subject to multiple and potentially inconsistent adjudications in foreign countries. (D.I. 465 at ¶ 3–6). Defendants also contend that there are practical difficulties posed by the geographic and linguistic diversity of the potential class in terms of giving them notification of the action in accordance with the Hague convention and keeping them apprised of this litigation. (D.I. 465 at ¶ 7–12). Further, Defendants maintain that the interests of the foreign plaintiffs cannot be adequately protected without a foreign class representative.

Courts have recognized that class certification may be inappropriate where obstacles exist due to the inclusion of foreign class members. *See e.g. Ansari v. N.Y. Univ.,* 179 F.R.D. 112, 116–117 (S.D.N.Y.1998); *CL–Alexanders Laing & Cruickshank v. Goldfeld,* 127 F.R.D. 454 (S.D.N.Y.1989). Courts have also recognized the value of foreign class representatives in representing foreign stockholders in cases involving significant foreign stock ownership. *See e.g. Krangel v. Golden Rule Res., Ltd.,* 194 F.R.D. 501, 506 (E.D.Pa.2000).

It appears to the Court that there are a significant number of foreign investors in this case, which the Lead Plaintiffs seek to include in their proposed class. The Court is aware of the practical difficulties involved in maintaining a class comprising foreign investors. Further, the Court observes that Lead Plaintiffs have not adequately responded to Defendants' concerns regarding the issues of class management and damages suffered by purchasers on foreign exchanges. However, in the Court's view, the appropriate way in which to address the concerns related to foreign investors is not to deny class certification, but to certify a class comprising only domestic investors. Accordingly, the Court will certify the class but exclude any foreign investors from it.

## CONCLUSION

For the reasons discussed, the Court will grant Lead Plaintiffs' Motion For Class Certification with the exception of their request to include foreign investors in the class.

An appropriate Order will be entered.

## *ORDER*

WHEREAS, the Court issued an Opinion (D.I.721) and Order (D.I.722) in the above captioned consolidated action granting the Motion For Class Certification filed by Lead Plaintiffs;

WHEREAS, the Court inadvertently omitted Policemen's Annuity & Benefit Fund of Chicago ("PABF") from the movants identified collectively as Lead Plaintiffs in the first paragraph of the Opinion;

NOW THEREFORE, IT IS HEREBY ORDERED this 19 day of June 2003, that the first paragraph of the Opinion (D.I.722) is amended to include Policemen's Annuity & Benefit Fund of Chicago ("PABF") as one of the movants collectively identified as Lead Plaintiffs.